IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JARRAD BABINEAUX, | § | |
| TDCJ-CID NO. 1377101, | § | |
|     Petitioner, | § | |
| v. | § | CIVIL ACTION NO. H-09-1376 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
|     Respondent. | § | |

OPINION ON DISMISSAL

Petitioner Jarrad Babineaux, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his felony convictions for aggravated assault and aggravated robbery. (Docket Entries No.1, No.8). Respondent has filed a motion for summary judgment. (Docket Entry No.13). Petitioner has not filed a response to the motion. After considering all of the pleadings and the entire record, the Court will grant respondent's motion for summary judgment and dismiss this habeas petition.

I. BACKGROUND AND PROCEDURAL HISTORY

A jury in the 185th Criminal District Court of Harris County, Texas, heard the following evidence as summarized by the First Court of Appeals for the State of Texas:

> Jessica Svetlik, an employee at West Southern National Bank, testified that on September 16, 2005, shortly after 1:00 p.m., as she was sitting at her desk and as Deputy Cantu, a security guard was sitting at the officers' station, "two people [came] running in and screaming." The officers' station is located approximately five to six feet to the immediate right of Svetlik's desk, with the tellers located in front of her desk to the far left. Both assailants wore black outfits, and one wore a white mask. In their hands, one man had a "black gun" and the other man had a "shiny silver gun." The two men entered the bank through the lobby and ran straight toward Deputy Cantu's station, yelling, "Give me your gun." Svetlik told

the two men to stop, and they yelled, "No. This is for real." As one of the men stood in front of Cantu holding the silver gun up against him, the man with the black gun struggled with Cantu and tried to take his gun. Both kept telling Cantu to give them his gun. After the man with the black gun stopped struggling with Cantu, Svetlik put her head down, said to herself, "I'm going to die here," and then heard two gunshots fired from within the lobby. When she looked up, she saw Cantu chasing the two men out of the bank. Svetlik threw her keys to another employee and told him to lock the front door, while Svetlik called for emergency assistance.

Svetlik further testified that the only time that the two assailants addressed her directly was when one of the men said. "This is for real." She explained that the man with the silver gun stood in front of her and alternated pointing the gun toward her and Cantu. The entire struggle took place in the area of the officers' station, and neither assailant approached the teller windows to demand money, either verbally or in writing, because they were struggling with Cantu. She noted that one weapon was "black and it looked like a gun" and the other weapon was silver and "very shiny." The two shots were fired inside the lobby, and after the shots were fired, the two men and Cantu ran out of the bank. On the day in question, the bank had $250,000 in its vault, and the three tellers had $20,000 each.

Fort Bend Sheriff's Deputy J.A. Cantu testified that he was working an "extra job" at the bank, sitting at his desk, when he saw "two gentlemen in masks" approximately "five to ten feet" away from him. Cantu stood up as soon as he saw the two men and "both of their guns," thinking that "something really bad is about to happen." One of the men pointed a black gun at Cantu's stomach and demanded Cantu's gun as he held Cantu's shirt. The other man, with a silver gun, stood to the right of the man with the black gun. At this point, Cantu did not know that the black gun was a "BB gun." The man holding Cantu's shirt turned to the other man and said, "Shoot this mother fucker." Cantu hit the man's hand with his left hand, drew his weapon, took two steps, pointed his gun at them, and told them to drop their guns. Neither of the two men dropped their weapons, and Cantu shot twice. The two men "took off running" at the same time. Cantu holstered his weapon and told the bank employees to call for emergency assistance.

Cantu further testified that the two men veered in different directions. Cantu followed one of the men, who he later identified as appellant, toward his left. When the other man went over a fence, Cantu heard a firearm discharge.  Eventually, once Cantu was ""pretty close" to appellant, Cantu drew his weapon, ordering him to "get to the ground," but appellant collapsed. With his firearm drawn, Cantu told appellant to show him both his hands, and appellant told Cantu that his arm was

broken. Once Cantu saw that appellant did not have anything in his hands, Cantu handcuffed him. After appellant told Cantu that he had been shot, Cantu turned him over, patted him down, and saw that he had been shot. Cantu noted that appellant, who was no longer wearing a mask, was wearing a black t-shirt, gray pants, and black gloves. Appellant told Cantu that Cantu had shot him for "no reason." A woman then approached Cantu and told Cantu that appellant had dropped something behind him. Cantu looked down and saw a gun. After another officer arrived and appellant's shirt was removed, Cantu discovered that appellant had two bullet wounds. Cantu also found a trash bag on appellant. "That's when it really hit [Cantu] that they were really there to rob the place."

On cross-examination, Cantu explained that the assailants were inside the bank for "[m]aybe 15 to 20 seconds" before the shooting occurred. Cantu did not recall that the assailants said anything to Svetlik. Additionally, he was not aware of the assailants making any demands for money or other property to any of the bank tellers. The only demand that the two assailants made was for Cantu's firearm. He never saw the assailants point any weapons in a direction other than toward himself, and Cantu agreed that a robbery did not occur because the assailants did not make any demands or take any property. However, on re-direct examination, Cantu further testified that it was not accurate to say that a robbery did not take place because the only reason that a robbery did not occur was due to Cantu's preventative actions.

Houston Police Department ("HPD") Officer J.N. Duerer testified that inside the bank, he found two fired cartridge cases from a .40 caliber Smith & Wesson Winchester located on the floor near a security desk. In the parking lot outside the bank, Duerer recovered a mask, described as "like a Halloween mask." HPD Officer Farmer gave a pistol that he recovered to Duerer. Duerer knew that the pistol was not a "real weapon" because he was able to fully view the weapon and see the BB clip at the bottom, which he typically does not see on "real firearms." Duerer explained that, except for the BB clip, the weapon looked like any other firearm that he had seen.

HPD Forensic Firearms Laboratory Supervisor M. Lyons testified that he examined a .40 caliber Glock pistol, a fired bullet jacket, a fired .380 auto cartridge case, two fired .40 caliber cartridge cases, and a "pneumatic pistol." The official name for the pneumatic pistol is a "BB gun," also called an "air pistol." Lyons explained that a "pneumatic pistol or a pneumatic gun uses a compressed gas, not the result of combustion of powder. In this pistol, the compressed gas is $CO_2$ and not air." In order to determine whether the weapon was capable of causing serious bodily injury, he had to determine the potential velocity of a projectile from the

> weapon. Lyons noted that, generally, a velocity of approximately 275 feet per second has the potential to penetrate skin, but without doing any "specific empirical testing," the "300 and 350 feet per second range would be sufficient, in [his] opinion, to penetrate skin." Moreover, "if it can penetrate skin, then it does have the ability to cause serious bodily injury and potentially death."
>
> Lyons['s] tests of the pneumatic pistol with the nine BB's submitted with it demonstrated an average velocity of 438 feet per second, with a range from 418 to 457 feet per second. After the State gave Lyons the legal definition of a "deadly weapon" as "[a]nything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury, or anything that in the manner of its intended use is capable of causing death or serious bodily injury," Lyons stated that, in his expert opinion, the pneumatic pistol was a deadly weapon. Lyons further explained that it had the highest velocity that he had measured for this type of weapon. He also noted that the weapon had a warning label from the manufacturer stating, "Warning. Not a toy. Misuse or careless use may cause serious injury or death."
>
> Lyons further testified that a $CO_2$-powered weapon, such as the one at issue here, gets its power from compressed $CO_2$ in a "powerlet." He noted that there is a distinction between a "$CO_2$ pistol" and an "air pistol," in which a pumping action compresses the gas that provides the pressure necessary to project a BB or a pellet. However, Lyons also explained that although the general term for such a weapon is "pneumatic gun" and it does not use air, it is very common to refer to such a weapon as an "air gun."

*Babineaux v. State*, No. 01-06-00608-CR, No.01-00609-CR, 2007 WL 1953693 at *1-3 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). The jury convicted petitioner of aggravated assault on a public servant with a deadly weapon in cause number 1070905 and aggravated robbery in cause number 1070904. *Babineaux v. State*, No. 01-06-00608-CR, Clerk's Record, page 20; No.01-00609-CR, Clerk's Record, page 27). The jury assessed concurrent sentences of twenty years confinement in TDCJ-CID for the aggravated assault conviction and fifteen years confinement for the aggravated robbery conviction. *Babineaux*, No. 01-06-00608-CR, Clerk's Record, page 20; No.01-00609-CR, Clerk's Record, page 27).

4

On direct appeal, petitioner complained that the evidence was legally and factually insufficient to support both convictions due to a fatal variance in the indictments and the evidence which showed that a "$CO_2$ pistol is not a deadly weapon[.]" He also complained that the evidence was legally and factually insufficient to support his aggravated robbery conviction because both "complainants denied that a robbery occurred[.]" Petitioner further complained that the prosecutor engaged in improper jury argument and that both convictions violated the Double Jeopardy Clause of the United States Constitution. *Babineaux v. State*, No. 01-06-00608-CR, No.01-00609-CR, 2007 WL 1953693 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). The state intermediate appellate court affirmed the conviction. *Id.* The Texas Court of Criminal Appeals refused his petitioner's *pro se* petitions for discretionary review. *Babineaux v. State*, P.D.R. No. 1121-07; No.1122-07.

Petitioner sought state habeas relief from the convictions on the following grounds:

1. He was denied the effective assistance of counsel at trial because his trial counsel (a) relied on the State's version of the facts; (b) failed to pursue a pretrial discovery motion or motion in limine with respect to testimony regarding a firearm; (c) failed to locate and procure key witnesses; (d) failed to contact an independent forensic firearm expert and to make an independent investigation; and, (e) failed to object to the prosecutor's inappropriate comments in front of the jury;

2. He was denied a fair trial because the State failed to produce exculpatory evidence regarding the sufficiency of the evidence to sustain a conviction based on the fatal variance between the indictment, trial evidence, and the jury charge on the element of deadly weapon;

3. The evidence was legally and factually insufficient to support his aggravated assault conviction because the $CO_2$ pistol was not a deadly weapon or a firearm;

5

> 4. The evidence was legally and factually insufficient to support the aggravated robbery conviction because there was not evidence that a robbery occurred;
>
> 5. The prosecutor made inappropriate remarks to the jury during closing arguments of the guilt-innocence phase of trial;
>
> 6. The state district court erred in denying a motion for mistrial based on improper jury argument during the punishment phase of trial; and,
>
> 7. His convictions were obtained by a violation of the protection against double jeopardy.

*Ex parte Babineaux*, Application No.WR-71-510-01, pages 2-24; Application No.WR-71,510-02, pages 2-24. The state district court, sitting as a habeas court, recommended that relief be denied and entered written findings. *Ex parte Babineaux*, Application No.WR-71-510-01, pages 108-110; Application No.WR-71,510-02, pages 108-110. The Texas Court of Criminal Appeals denied the applications without a written order on the findings of the trial court without a hearing. *Ex parte Babineaux*, Application No.WR-71-510-01, at action taken page; Application No.WR-71-510-02, at action taken page.

In the pending petition, petitioner seeks federal habeas relief from these convictions on the following grounds:

> 1. Petitioner was denied the effective assistance of counsel at trial because trial counsel failed:
>
>    a. to pursue any pretrial motions, *i.e.*, a motion for discovery and a motion in limine, and
>
>    b. to object to the prosecutor's impermissible comments in front of the jury; and,
>
> 2. He was denied a fair trial because the prosecutor withheld exculpatory evidence regarding the type of weapon used.

(Docket Entries No.1, No.2, No.8).

Respondent moves for summary judgment on grounds that petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and that his claims fail on the merits. (Docket Entry No.13).

## II. DISCUSSION

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, petitioner presented claims in his

7

petitions for discretionary review and state habeas corpus applications, which the Texas Court of Criminal Appeals denied without written order. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner in his state habeas application have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 2254 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692). The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness. *Ogan*, 297 F.3d at 360. Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the

result of reasonable professional judgment." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair."  *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decisions on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner complains that his trial counsel was ineffective because he did not file a pretrial discovery motion and a motion in limine regarding the firearms in this case; he further complains that his trial counsel did not object to the prosecutor's comments during closing

11

arguments. The state habeas courts found that petitioner failed to show that his trial counsel rendered constitutionally ineffective assistance of counsel and that the totality of the representation afforded petitioner was sufficient to protect his right to reasonably effective assistance of counsel. *Ex parte Babineaux*, Application No.WR-71-510-01, page 108; Application No.WR-71-510-02, page 108.

Petitioner has not shown that he suffered any prejudice from these alleged deficiencies. Moreover, petitioner does not explain why testimony regarding firearms, an air gun, or a $CO_2$ gun would have been inadmissible in this case; nor does he state any facts to show that the state district judge would have granted a motion in limine with respect to testimony regarding these guns. Likewise, petitioner does not state what evidence he sought to discover or what the additional evidence would have revealed. Therefore, any objection voiced by counsel based on the allegations in petitioner's pleadings would have been frivolous. "Counsel is not required by the Sixth Amendment to file meritless motions." *U.S. v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). Accordingly, petitioner fails to overcome the state habeas courts' findings regarding the effectiveness of his trial counsel and his failure to file certain pre-trial motions.

Petitioner's complaint that his trial counsel failed to object to the prosecutor's impermissible comments during closing arguments is also without merit. Presumably, petitioner complains of the following argument, in pertinent part:

> I don't have to prove – I have to prove a firearm. I don't have to prove that it's a .38 or a .45. I just got to prove that it's a firearm.
>
> In this case, yes, I did plead an air pistol.
>
> And I do have to prove that it's an air pistol, and I did do that.

*Babineaux v. State,* No.01-06-00608-CR, No.01-06-00609-CR, Reporter's Record Volume 4, page 82.

The record reflects that the prosecutor made this argument in response to the argument of petitioner's trial counsel that the State had not proven that petitioner used an air pistol, as alleged in the indictment, and therefore, had not proven all the elements of aggravated robbery. *Id.*, pages 71-75. Under Texas law, such argument is proper as a response to opposing counsel's argument.[1] *See Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993). Therefore, any objection to such argument would have been frivolous. Counsel is not ineffective for failing to lodge frivolous objections. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (stating "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite").

Accordingly, respondent is entitled to summary judgment on petitioner's claims regarding the ineffectiveness of this trial counsel.

### B. Exculpatory Evidence

Due process is violated when the prosecution, after a request, suppresses evidence favorable to the accused that is material to either guilt or punishment, regardless of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). *Brady* applies to the discovery of "information which had been known to the

---

[1] The prosecutor also reminded the jury that the State's expert witness Mike Lyons had testified that the $CO_2$ pistol was generally known as an air pistol. *Babineaux v. State,* No.01-06-00608-CR, No.01-06-00609-CR, Reporter's Record Volume 4, page 81. Such argument is also proper as a summation of the evidence. *Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993).

prosecution but unknown to the defense." *West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996). "Evidence is not 'suppressed' if the defendant either knew, or should have known of the essential facts permitting him to take advantage of any exculpatory evidence." *Rector v. Johnson*, 120 F.3d 551, 560 (5th Cir. 1998) (quoting *West,* 92 F.3d at 1399). The State is not required to furnish information that is fully available to the defendant or that could be obtained through reasonable diligence. *Blackmon v. Scott*, 22 F.3d 560, 564-65 (5th Cir. 1994).

Petitioner alleges that the State suppressed evidence of the expert's opinion that the gun used by petitioner was not an air pistol but a $CO_2$ pistol. (Docket Entry No.2). Petitioner claims that had such information been disclosed before trial, his trial counsel would have moved to quash the indictment. (*Id*.).

Petitioner alleged in his state habeas application that he was denied a fair trial because the State failed to produce exculpatory evidence regarding the sufficiency of the evidence to sustain a conviction based on the fatal variance between the indictment, trial evidence, and the jury charge on the element of deadly weapon. The state habeas courts found that petitioner's challenges to the sufficiency of the evidence were not cognizable in post-conviction proceedings. *Ex parte Babineaux*, Application No.WR-71-510-01, page 108; Application No.WR-71,510-02, page 108. The state appellate court found the following in pertinent part:

> [A]ssuming that a variance existed between the indictment and the proof at trial [regarding the nomenclature of the weapon], such a variance would be immaterial. There is no indication in the record that appellant did not know what weapon he was accused of exhibiting, no indication that he was surprised by the proof at trial, and, finally, such variance would not subject him to another prosecution for the same offense.

*Babineaux v. State*, No. 01-06-00608-CR, No.01-00609-CR, 2007 WL 1953693 at *5 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Likewise, the record before this Court does not show that petitioner did not know what weapon he was accused of exhibiting and no indication that he was surprised by the proof at trial. Moreover, the record does not show that the State did not disclose the expert's findings to petitioner's trial counsel or that expert's report regarding the type of gun was material to either guilt or punishment.

Accordingly, petitioner's claim is without merit and subject to dismissal.

### III. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, sua sponte, without

requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

### IV. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state proceedings, the Court ORDERS the following:

1. Respondent's motion for summary judgment (Docket Entry No.13) is GRANTED.

2. Petitioner's petition for federal habeas relief is DENIED.

3. A certificate of appealability is DENIED.

4. All other pending motions, if any, are DENIED.

5. This habeas action is DISMISSED with prejudice.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 14th day of May, 2010.

*[signature]*
MELINDA HARMON
UNITED STATES DISTRICT JUDGE